Good morning, your honors. Ron Cicca, excuse me. I'm the trustee in the case of Matthew Casserino. I request leave to reserve two minutes for rebuttal. What brings the case before this court are decisions by Judge Rackleff, the bankruptcy judge assigned this case, and the bankruptcy appellate panel regarding an interpretation of ORS 23.240 to extend entitlement to claims of homestead to a rent deposit that was made by a debtor at a time prior to bankruptcy on a month-to-month lease. How we got to that point was essentially on claim I had brought against the landlord, and this is where Section 365D of the Bankruptcy Code comes into play, an issue that I don't believe was sufficiently dealt with at the courts below. The landlord, it was conceded by facts and ultimately resolved to noticed settlement, was holding the advance rent payment of $750 plus a security deposit. The bankruptcy petition was filed on November 22nd at that time. Debtor was current on all rent obligations up to that point in time, so there was no arrearage. The impact of Section 365, which results in automatic rejection of an executory contract such as a lease that might be in play in this case and other similar cases, operates among other fashions to establish a breach to entitle the landlord to make such claim as the landlord might have for monies owed prior to the commencement of the case. So that would be a claim I would have to resolve as part of claims adjudication. In this case, there was no such claim by the landlord, but in fact the landlord had been overpaid to the extent he was holding monies not yet earned nor to which the landlord was entitled. But you don't mean overpaid in the violation of a contract. I mean, he had the deposit that he was entitled to on a lease. It was a deposit being held pursuant to that contract. So there's nothing irregular about his having that deposit? There's nothing irregular whatsoever other than the interplay with the bankruptcy court. No, that's not an irregularity, but if we don't talk about the bankruptcy, there's nothing irregular about the deposit. No. And so the question is, what's the effect of the bankruptcy on that deposit? That's correct. I'm not talking about irregularity. I'm just talking about the interplay between a perfectly normal lease transaction and the bankruptcy. It was a perfectly normal lease transaction with that being an advanced deposit. At the commencement of the case, it's much harder to determine what assets are available for distribution to creditors. I perceive that being an overpayment to the landlord who is no longer entitled to it. I do not pay post-petition lease obligations for tenants. So I made demand. That did go to an adversary proceeding and was in the process of settlement when debtor Matthew Casarino came forth for the first time with a claim of exemption to that money. Let me start at a lower level if I can and not talk for the moment about the deposit, but rather talk about the leasehold interest. Is it your position that a residential leasehold interest is not a homestead within the meaning of the Oregon Homestead Act? That is my position. How can that be? I'll just give you a little example. Let's say that I've got a one-year lease for which I have paid in advance. I get to occupy the premises for a lease. Let's say I got quite a favorable rental and I'm six months in. I declare bankruptcy. You're saying that that leasehold, the remainder of the six months, is not within the homestead exemption? I say that because it doesn't seem to be defined as such within the terms of the homestead statute that's at issue here, and I've set that out. Isn't there an Oregon case that says it is? No, I'm not aware of any. You can't have a homestead in a leased premise? Not that I'm aware of, Your Honor. The cases which have been brought to the court, none of those are leasehold cases. There are cases which address life estate. There's a case which is a key case here with respect to the option for purchase. But, again, that seems to be an acknowledgment by the court that the exercise of such an option leaves that person in permanent. But if you're right, Oregon law allows a homestead exemption for someone wealthy enough to own a home and fee simple, but does not allow a homestead exemption for someone poor enough who has to rent. That doesn't sound like what the Oregon legislature likely intended. Well, that's what's not resolved, Your Honor, and that's where I have indicated that because the legislature focused on ownership, they seem to be referring to something that would be greater than a leasehold interest. Well, can't one own a leasehold? That's true.  Why is that a stretch? Because I don't think those holding as tenants under leases are generally regarded as owners. Absent an anti-alienation, I can sell my leasehold. That's true. It is an asset. So I guess under your vision I just sold something I didn't own? Which is an important point here because what is it the debtor truly had for which he could claim exemption? And my concern is whether or not that ties to the proceeds being held by the landlord. There's also a case law that says if you're simply a tenant at Sufferance, I think you're simply an intruder on the property, and there's law that holds that party would not be entitled to a claim of homestead. But that's not a leaseholder. That's someone who's there at Sufferance. I'm talking about a leaseholder. That's correct. This is the case in front of us. And this is where I think the court has to analyze the impact of 365 as to this case. How did that affect the rights of the debtor? Essentially terminate his right of continued occupancy because his filing in bankruptcy created that as an estate entitlement to the estate. Ultimately reject it. Where does that leave the debtor? I think that leaves the debtor with either an obligation to remove himself or simply renegotiate his terms with his landlord for continued occupancy.  What happens in Oregon? Let's say that I am actually a feeholder in a piece of property, but buying it on an installment contract. I declare bankruptcy. Let's say that the actual title isn't going to be transferred to me because it's being held in trust during the period that I'm signing off on this contract. Do I have a homestead exemption under Oregon law for buying a property on an installment contract? I believe you do. Why, under your reasoning, don't I have to give it up and trustee get all the payments I've made so far? I'm not sure you posited anything that suggested it was executory. If the contract is there, terms are agreed, it's going forward, and everything is done to consummate the sale. I'm in the middle of a purchase agreement, a 10-year agreement. I put down $100,000. I've got $200,000 I'm going to pay off over the next 10 years. I'm five years in. If it's a non-consummated purchase of the property and money has simply been deposited into escrow, I think there's an issue whether or not such money, which is really often in your pocket. I'm going to do what they used to do in the old days, and they occasionally do do. It's not an escrow, it's a purchase money contract. My seller has that money. Has it been earned by the seller? Well, I've occupied the premises for the last five years. I'm buying it on a purchase money contract. He's taken back a security interest on it. Now, what happens in bankruptcy? I assume Oregon treats that as a homestead. I suspect that would, under those facts, that would be interpreted as a homestead. My concern is when there's a deposit of money, and if we take that back one step further, let's assume we have someone who's saved a lot of money, $25,000, puts that into escrow, and wants to purchase a home, but that purchase never goes through. Is there an entitlement to homestead claim in the $25,000 deposit? I would say no. Common law homestead, or what was adopted in the early Oregon statutes, was the place you lived in. And the statute didn't concern itself very much with how you were paying for it, or who had the legal or equitable title, or security interest, or anything else. It just, if you lived there, if you had possession of it, they couldn't make you go out and sleep in your car if you claimed a homestead in it. Well, and maybe that's part of the problem. I approach this from the standpoint exemptions are established by statute. The statute that has been claimed here appears to require ownership, I believe, from its terms, long-term ownership. I agree it doesn't have to be fee simple. Ownership of the right to possess. But the month-to-month leasehold is so temporary and transitory, it really has no value. This is not worth very much. That's true. Yeah, it's not a big item. Well, I had another question for you, and that is how many homesteads does this debtor have, and to how many is he entitled? Each debtor is entitled only to one homestead. Well, why did nobody mention, and I didn't see anything in the bankruptcy court decision or the V.A.P. about the consistent or inconsistent claiming of a homestead in his rental and another homestead in his spouse's house? There wasn't a claim of homestead in the spouse's residence. They were separated at the time. I did not object to that. That was allowable. He could claim a homestead in her house that he wasn't living in, but he couldn't claim a homestead in his deposit where he was living. That would come down to, I mean, I know how the bankruptcy courts are interpreting that. If parties are separated but not yet divorced and the marriage situation is unsettled, I believe the court would allow him homestead in the residence being occupied by his wife because that's within the terms of the statute. And also the residence being occupied by himself? It was not being occupied by himself at that time, but the homestead statute doesn't allow it to be occupied by others dependent upon the debt. I'm trying to follow through on Judge Goodwin's question. I think the answer is he can't claim two homesteads. He can choose to claim the homestead occupied by his estranged but still wife, or he can choose to occupy the claim of the homestead his other place. You're saying he couldn't do it in any event. That's right. But he can't have both. Assuming there is claim of homestead in two different locations, a debtor is limited to one or the other. But is the question as to whether or not the claim of the wife's homestead, the claim of homestead for the wife's residence, the impact on this case, is that in front of us? That's not an issue in this case. There was no issue claimed below that raised any question about that. I have no reason to believe he's receiving double benefit by virtue of, I don't even know if there was an ultimate divorce, but I don't believe there's a dual claim that, in effect, came about. I think we're only talking about his claim of exemption in the money being held by the landlord and whether or not that could properly be characterized as proceeds. Let's assume for a moment, although I understand you're contesting it, let's assume for a moment that a leasehold agreement, even a month-to-month leasehold agreement, is a homestead within the meaning of Oregon law. If that's so, would you be able to get a deposit that is necessary for the maintenance of the possessory right? Assuming your premise that the leasehold is homestead and debtor's continuing to live in the property, I think the record is sufficiently clear that he was, I think the deposit being held by the landlord is still subject to the 365 issue of turnover, and I suppose you can correlate this to money in the bank that would be paid to the landlord but for the landlord already having it. Money in the bank would not be exempt. So your argument is even if the leasehold is a homestead, a deposit paid to the landlord, which is, for example, a cleaning deposit and a last month rent, that you're entitled to that money? Yes, that's my position. Because it's not part of the homestead estate? That's correct. On the basis that's simply an overpayment on a contract to which the landlord is not entitled, it's not in the nature of proceeds. Why is it an overpayment when absent bankruptcy is not an overpayment at all? It's a payment he's obligated to make, and making the payment is a condition for maintaining possession. The obligation there is one that's contractual between the debtor and the landlord that requires debtor to provide the landlord with money to be held, like in a separate bank account, to be applied to future rent. But if he didn't make the deposit, he doesn't have the leasehold. That is to say the maintenance of that deposit is essential for the maintenance of the homestead interest. It was in this case as a matter of contract negotiation, but that presupposes it was done for homestead purposes. I think we're really talking two things. No, no, you're not taking my point. Putting aside bankruptcy for the moment, the way an ordinary lease operates, and from all I can tell, the way this lease operates is, he has to put down the deposit as a precondition for maintaining possession. Correct? I can see that. So, if the leasehold and his maintaining possession is a homestead interest protected under Oregon law, why is the bankruptcy entitled you as the trustee to take money from the landlord that will automatically dispossess him of his homestead right? I disagree that it automatically dispossesses him because I think there are remedies. No, but you just accepted, as my premise, that the maintenance of the deposit is necessary for the possession. Let's try to get back to the bankruptcy aspect of the intervening cut. But I think 365 triggers, then, what is the entitlement on the part of the landlord, and by the same token, what is the entitlement to the debtor to have the bankruptcy estate continue to pay the landlord out of something not yet earned? I think there is an ovation of the lease at that point that the debtor needs to commit such further funds as may be necessary to pay the debtor. I understand your position is that the debtor, out of his own funds, the debtor who is declaring bankruptcy out of his own funds, they're going to come from, I'm not quite sure where, maybe his mother is going to have to put up the deposit that you just took away from the landlord. I think the answer is that the money held by the landlord is not in the nature of proceeds from any sale, and that's what the statute specifically refers to as the only exception to what must otherwise be a real property estate. Mr. Stiggin, the concern that I have with this case is that if the practical effect is to dispossess the debtor of the right to occupy the property, the landlord is basically going to say, sorry, no damage deposit, no first and last month's deposit, you're out of here. Haven't we completely undermined any protections that the homestead exemption is designed to provide for a debtor? I don't believe so, and that's based on personal experience, because this is the first case of this nature I've seen in 22 years of being a trustee. I would think generally it's just a matter of advanced planning to make sure that you will handle the financial needs rent payments or such other financial obligations as you need. If it's not exempt, recognizing you need to either deal with it. I think there is an exemption that can be applied, and that's the one the legislature gave under what was then ORS 23.1601N at that time, which was the pour-over exemption, which allows each debtor up to $400 in cash or equivalency.  So that was not a factor. They had already exceeded their exemptions, and there were other funds brought into the estate from other money entitlements they had. I hear your answer, but that doesn't make me any more comfortable that we're talking about $1,200 here. Is that right? I understand. And the net effect is that this guy may lose his residence, and then he, like Judge Fletcher said, he's going to have to find some other source of income, maybe borrow it from relatives who may or may not exist to loan it to. These get into the policy issues, and I don't want to appear to be an insensitive person, but I think a bankruptcy is a contract that you're getting rid of a lot of debt in exchange for an ability to refurbish your financial affairs, but there are some downsides to doing that because any debtor who has funds which are beyond exemption must turn over those funds for administration to the creditor. I appreciate the fact that you're doing your job as the trustee and you're interpreting your obligations as you believe them to be, but I'm looking at a number of bankruptcy court decisions around the country where trustees have taken a similar position to yours, and the bankruptcy courts have not been very sympathetic to your litigating position. Bankruptcy courts tend to be very liberal in approaching rights of debtors. Well, particularly when the difference is between whether you get to sleep under a roof or in your car or out in the public park. Well, that's where my concern is. We carry it to absurd results where a park becomes a homestead or any number of things. I think we have to focus on legislative intent. I think the flags here from legislative intent suggest that it was ownership of residents and not mere leasehold that was intended and that the only way there can be an exemption in anything other than the estate itself is proceeds from sale, and we simply don't have that here.  Thank you, Your Honor. Thank you. Commissioner Christianson. Please support. I'm Greg Christianson representing Matthew Casarino, the debtor herein. I don't believe Mr. Sticca is insensitive, but trustees in bankruptcy are just like the government. They're always looking for new sources of revenue. I don't think this is a good source because a debtor in Oregon coming through bankruptcy is only allowed a $400 cash exemption. So when they turn around and their landlord then requires that their first or last month and security deposit be replenished, it does put them in a very difficult position. I've had several clients like that who the horror in their eyes when Mr. Sticca asks whether they want to pay him their rent, prepaid rent and security deposit, or get it from their landlord puts them in a real pressure situation where they will find some source of revenue and borrow it to give it to the trustee rather than have the trustee contact their landlord with the humiliation possible eviction. So is that what typically happens is they just fork over the money to the trustee? Yes. I've had several where I've encouraged them. I said, you don't have to do this. We can go into court. They said, I don't want my landlord involved in it. So as a practical matter, what's happening in the cases that you've dealt with, this one not included, is that they do find money from mom or brother or something. But obviously that inhibits their fresh start. I think that violates a bankruptcy court policy. It's not the sort of an asset that a normal creditor would ever go after in a garnishment proceeding or execution. It's not an asset that's really out there for creditors. This I understand is not directly the case in front of me, but I'd like to know what is the Oregon homestead exemption for someone who owns a home in Fee Simple? Is there a top dollar limit? Yes, $25,000 for a single person, $33,000 combined for a married couple. For the homestead if they own it in Fee Simple? Yes. Oregon's opted out of the federal exemptions, but if we were to look at the federal exemptions in this case, we'd see very clearly that this type of a deposit, prepaid rent, would clearly qualify for the federal exemption. So it's not, I think as Mr. Sticker portrays it, is somehow this is an aberration that a leasehold can qualify as an exemption. The federal exemption is very liberal, up to I think $9,700 can be applied to any type of real or personal property, and this would certainly qualify for that. The bankruptcy court and the bankruptcy appellate panel both issued very comprehensive decisions. I don't think I can add a lot to their analysis of the law on this topic. The only point I might make is that I do think that Mr. Sticker misconstrued Section 365. That is a provision for unexpired leases as well as executory contracts. But what it is is basically a safety net for a trustee in bankruptcy so that he won't get stuck with an unprofitable lease. And that has a 60-day automatic rejection provision in it so that if he has not taken affirmative action, making a motion to assume an expired lease or executory contract, that property is abandoned by the estate, comes out of the estate in its entirety. And you either assume or you reject it entirely. Or you can't fractionalize an executory contract or an expired lease. There's a lot of procedural mischief happened here because Mr. Sticker did not make a motion to assume this lease within the 60-day period. At that time, the lease was rejected. That is, it's no longer estate property. It's abandoned out of the estate back to the debtor. And that's what happens thousands, hundreds of thousands of times every year when car leases or these residential leases are not assumed. They simply revert back to the debtor. The debtor keeps paying the rent, and the system just keeps running smoothly. If he had made a motion to assume here, then I think we would have had a very interesting analysis under the landlord-tenant law and who's going to pay the rent. Mr. Sticker's not in possession of the property, and on and on. But by going around that requirement in Section 365, we end up here where Mr. Sticker says, well, the lease was terminated. Well, a rejection is not a termination. And that he has to, that is, Mr. Casarino has to enter a novation. I don't think he has to enter a novation. Under the Ninth Circuit case of Parker, you just keep on making your payments under your rental agreement. So let me make sure I understand how the statute works. Once bankruptcy is filed, the statute kicks in, and the trustee has 60 days within which he must affirmatively adopt any existing leases. Otherwise, he is essentially abandoning them as assets. He actually has to get a court order approving the assumption. And what happened here was that Mr. Sticker, as the trustee, then simply brought an adversary action against the landlord, demanding that he turn over the $1,200 loan. Well, well after a year, after the lease was rejected. In case I'm surprised in a way, we're being presented with this question at this time. I mean, obviously, people renting residential lease homes go bankrupt all the time. And that this should be a question now presented to us, it's sort of surprising to me. Well, I don't think Mr. Sticker has been doing this for 22 years. My experience is this happened about three years ago. And it took me, well I shouldn't say me, but it took that long to find a client and a landlord who stood up and didn't want to do this. I see. Thank you. Thank you very much. Mr. Sticker, you've got a minute if you'd like. Thank you, Your Honor. Once again, I think I didn't get it. The operation of Section 365 is not an abandonment. In fact, there was a motion to compel abandonment, which was denied by Judge Radcliffe in this case. It's a question of rejection and the legal impact of what that brings about. The one thing I did want to mention here, though, is I think there's an incorrect analysis that's been perpetuated by the bankruptcy appellate panel, which I think is not correctly applying Enright White. And the Fayette v. O'Dwyer case is that last one being the unpublished decision by Judge Levy. The statement we now have, and I submit it's incorrect, is that a homestead may be claimed in any interest in property that carries with it the right of possession. There's no other case that holds that. The cases that have analyzed that go back. Some of these deal with fraudulent transfer issues that have always found that there is an actual estate higher than that of a leasehold involved, which gives permanency to the entitlements of the party. So this will be a dramatic departure from those prior case holdings, to hold that just any property interest, leasehold or otherwise, is subject to a homestead exemption. I think it's a misapplication of what the statute is really requiring. So is your position that it is a rejection of the lease, and therefore there must have been a novation because the landlord continued to permit the debtor to occupy the leasehold property? I think in effect there was, and I think that's usually the result. There's nothing that compels me to abandon. I normally would not assume any kind of lease of this nature unless there was some financial benefit to do that. So there's automatically, by operation of law, a rejection unless a trustee assumes the contract within 60 days. I'm not sure about the... But if you're right and the landlord, in essence, through novation, continued to lease the premises on what are now the terms of a new lease, wouldn't that also include the retention or the requirement of a security deposit first and last month's rent? It may, but that would involve something post-bankruptcy between the landlord and the debtor now outside of the bankruptcy procedures. Well, and my question to you, Mr. Stig, is by virtue of your rejection of that lease, what gives you the right to then come back and claim the $1,200? The basis of the claim, as I announced, was the fact that the landlord holding those funds, I allege, was not entitled to hold those funds. And as a custodian under Section 543 of the Bankruptcy Code, holding unearned rents was obligated to turn those back over, and that was resolved by virtue of a settlement where the landlord agreed to do that and acknowledged he had no other claim of bankruptcy. So your position, I guess, would have to be that if it does amount to a new lease, the debtor is going to have to come up with $1,200 in new money, that the landlord can't simply retain the old money because that's prefiling and therefore was an asset of the estate. Yes, because the landlord had no entitlement to those funds. It's money now that's on an account that needs to go to somebody. I say it comes to the estate. The debtor says, but that's my homestead. You need to turn it back over to me. And I'm saying it doesn't fit within the definition of the homestead statute to qualify for that. It does qualify for this other statute, but you've already exhausted that. Thank you, Your Honor. Thank you. Thank you both for a very interesting and useful argument. I guess we'll settle this subject to being directed by. This one sounds like a certain cert grant. Depending on how we do it. Thank you very much. The case of Sticca v. Casarino is now submitted. We are in adjournment until tomorrow morning. All rise. This session stands adjourned.
judges: Goodwin, W. Fletcher, Tallman